IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA DYAL, CHRISTOPHER POPP, ) <br> JASON PANICO, RICHARD WEBER, ) <br> ROBERT WEICHMANN, DEAN ZERVAS, ) <br> and MARCOS CAMPOS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> PIRTANO CONSTRUCTION, INC., ) <br> INSTALLATION PROFESSIONALS, L.L.C., ) <br> MIKE PIRAINO, JOE PANTANO, JACK ) <br> HORN , and MIKE MOREAU, ) <br> ) <br> ) <br> Defendants. ) | Case No.: 12-cv-09687 <br><br> Hon. Judge Thomas M. Durkin |

## DEFENDANTS' MEMORANDUM IN SUPPORT
## OF MOTION FOR RECONSIDERATION

NOW COME the Defendants, PIRTANO CONSTRUCTION, INC., INSTALLATION PROFESSIONALS, LLC, MIKE PIRAINO, JOE PANTANO, JACK HORN and MIKE MOREAU, by and through their attorneys SmithAmundsen LLC and for their Memorandum in Support of Motion for Reconsideration, state as follows:

### INTRODUCTION

The parties filed cross-motions for summary judgment. On March 27, 2018, the Court denied Plaintiffs' Motion for Summary Judgment and granted in part and denied in part Defendants' Motion. (R. 146).[1] During a status conference held on April 17, 2018, counsel for Defendants informed the Court that Defendants intended to file a motion to reconsider with respect to the Court's denial of Defendants' Motion because it appeared there was a misapprehension of arguments and critical admissions in the record evidence. Notwithstanding,

---
[1] The ECF docket numbers will be referenced as "R. __").

counsel for Defendants acknowledged that the Court's ruling on cross-motions for summary judgment significantly narrowed the issues in dispute and there might be a reasonable opportunity to resolve the case outside of litigation. Accordingly, the Court permitted Defendants to hold the filing of any motion for reconsideration until the parties had an opportunity to revisit the possibility of settlement.

On April 17, 2018, the case was referred to Magistrate Judge Daniel G. Martin for a settlement conference. A settlement conference was scheduled for June 4, 2018, but had to be rescheduled as a result of Plaintiffs' counsel becoming ill. The settlement conference was reset to June 26, 2018. On June 21, 2018, Magistrate Judge Martin held a telephone conference with counsel for the parties and ordered further meet and confer before holding an in-person conference. The parties engaged in further settlement communications and Defendants extended a good faith counter offer in accordance with Judge Martin's instructions. Plaintiffs rejected the offer and counsel for Plaintiffs advised Plaintiffs were not interested in further negotiations.[2]

In light of the representation that Plaintiffs prefer to litigate this matter, Defendants respectfully seek reconsideration of the Court's decision to deny, in part, Defendants' Motion for Summary Judgment. Specifically, Defendants request that this Honorable Court review relevant sections of the record evidence inasmuch as direct admissions by Plaintiffs are dispositive on the issue as to whether the Defendants' compensation structure incentivized Plaintiffs to work more efficiently.

As a result of misapprehensions of arguments made by Defendants and admissions made by Plaintiffs, the Court incorrectly found a question of fact as to whether the compensation structure at issue incentivized Plaintiffs to work more efficiently. Defendants respectfully

---

[2] Counsel for Plaintiffs stated she intended to cancel the referral to Magistrate Judge Martin at the July 12, 2018 status, but that status hearing was stricken by the Court with a new date to be set in the future.

request that this Honorable Court reconsider its ruling in light of the clarifying information set forth in this memorandum.

## LEGAL STANDARD

The Court has inherent authority under Rule 54(b) to reconsider its interlocutory orders. *Janusz v. City of Chi.*, 78 F.Supp.3d 782, 787 (N.D. Ill. 2015); Fed. R. Civ. P. 54(b) (Non-final orders "may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). "Motions for reconsideration 'serve a limited function to correct manifest errors of law or fact or to present newly discovered evidence.'" *Hagenbuch v. Sonrai Systems*, 130 F.Supp.3d 1213, 1214 (N.D. Ill. 2015) (citations omitted). "They are proper where the court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Id*. A motion to reconsider is not appropriate for rehashing arguments previously rejected by the Court. *Janusz*, 78 F.Supp.3d at 787.

## ARGUMENT

The Court's finding that a jury must decide if Defendants' compensation structure incentivized Plaintiffs to work more efficiently[3] was due to a misunderstanding of Defendants' arguments and a misapprehension of key admissions by Plaintiffs on this very issue. Defendants recognize the cross-motions for summary judgment contained voluminous materials and this Motion for Reconsideration will allow the Court to narrowly review the admissions Defendants contend are dispositive on the issue of incentive pay. Accordingly, this is an appropriate basis

---

[3] R. 146 at p. 29.

3

for seeking reconsideration and Defendants have no interest or intention of rehashing arguments previously rejected by the Court.[4]

## I. PLAINTIFFS ADMIT DEFENDANTS' COMPENSATION STRUCTURE INCENTIVIZED EMPLOYEES TO WORK EFFICIENTLY.

The Court denied Defendants' Motion for Summary Judgment finding it was for the jury to determine "whether the [compensation] structure provided incentives to employees to work more efficiently," which will answer whether the system was in fact commission based and the purposes of the FLSA are furthered through the exemption. (R. 146, at p. 29). Defendants believe the Court misunderstood Defendants' arguments, as well as Plaintiffs' admissions as related to the incentive pay issue. For example, on this issue, the Court focused on Defendants' statement of fact related to Plaintiffs' ability to perform custom work and additional work for customers. (R.146, at p. 22). While Defendants maintain Plaintiffs could perform custom work and upsell additional work, and such evidence supports the commission argument, in their Reply, Defendants clarified they were not relying on this evidence to establish pay was commission (i.e. incentive) based. (R. 131, at p. 17 of 27). Defendants specifically pointed out that Plaintiffs were not required to "make sales" in order to be paid on a commission basis under the exemption. *Id*.

In Reply, Defendants also had the opportunity to respond to Plaintiffs' argument that the pay system at issue did not incentivize the Technicians to work more efficiently. It appears the Court misunderstood the evidence and arguments presented, as the applicable law and Plaintiffs' admissions on this issue remove any possible dispute of material fact. That is, to prove the compensation system created an incentive, Defendants relied in large part on Plaintiffs'

---

[4] Defendants also acknowledge the Court is well versed in the relevant background of this case and intentionally omitted a background section in the interest of judicial economy.

4

admissions that work was assigned at the beginning of the day based on the efficiency of the Technician and how much work he or she could complete, as well as Plaintiffs' admission that Technicians could request additional assignments during down periods. (R. 131, at p. 20 of 27).

The following sets forth Defendants' relevant statements of material facts supported by record evidence and Plaintiffs' response showing the key evidence on the incentive issue is uncontested by Plaintiffs and is admitted as a matter of law:

> **R. 105, Defendants' L.R. 56.1 Statement of Material Facts, ¶ 22**
>
> During these down periods Plaintiffs could spend the time as desired, including ***seeking out other assignments***, going home, running errands or just sitting in the truck doing as they wished, such as playing on the phone, or talking with other Technicians. (Weichmann Dep. at 79:4-24, 80:1-24, 81:1-24, 82:1-12; Horn Dep. at 39:3-24, 40:1-8; Mortensen Dep. at 29:7-24, 30:1-9). There was not a set lunch time of 12:00 – 1:00 for Installation Technicians, but these down periods allowed for an uninterrupted meal period. (*Id.*).
>
> (R. 105, at ¶ 22) (emphasis added).
>
> **R. 124, Plaintiffs' Response to Defendants' L.R. 56.1, ¶ 22**
>
> Weichmann testified at the above cites that he would be sitting in the truck in a driveway for three hours not getting paid because he had a job that ended at 2:00 and the next job is not assigned until the 5:00 to 7:00 block. At 79:1-24, he testified that it was an occurrence that happened a lot. There would be days where the techs would have a 7:30 to 10:00 a.m. appointment and then a 5:00 to 7:00 p.m. appointment. They could not do whatever they wanted in between, because they had a company truck and company gas. They were not allowed to just drive around, and they couldn't go home without permission, and it was very rare anyway that they were near their house. Weichmann testified that down time where they had to sit occurred multiple times a week. They had no assigned job for a Comcast customer, but they were required to donate hours of downtime to their employers' benefit without pay.
>
> (R. 124, at ¶ 22).

Plaintiffs do not dispute Defendants' statement and evidence that Plaintiffs had the ability to seek out additional assignments. Plaintiffs did dispute the statements about being able to go home or run errands, but there is nothing within Plaintiffs' response to refute or contest that Plaintiffs could seek out other assignments. Moreover, Defendants' Statement of Additional Material Facts directly and thoroughly addressed the issue of the compensation system providing an incentive to work more efficiently. Plaintiffs had ample opportunity to dispute Defendants' statement with record evidence, including with affidavits from the Plaintiffs. Plaintiffs' failure to dispute Defendants' statements and evidence is an unmistakable admission that Plaintiffs indeed had the ability to obtain additional work and pay by working efficiently.

To remove any doubt, in addition to Plaintiffs' failure to respond to the statement in paragraph 22 of Defendants' statement of material facts, there is a glaring admission on this issue in response to Defendants' Statement of Additional Facts, ¶31, as follows:

> **Defendants' L.R. 56.1 Statement of Additional Facts, ¶ 31**
>
> Paying Technicians based on items of work completed provided an incentive for employees to work efficiently and productively to complete more work during the day to earn more money. (CM/ECF Doc. #105-2 (Weichmann Deposition) 77:18-19; CM/ECF Doc. #105-1 (Horn Deposition) at 38:2-24, 39:1-11, 40:3-24, 41:1-17; CM/ECF Doc. #105-22 (Mortensen Deposition) at 27:10-23, 28:18-24, 29:7-21, 30:21-24, 69:11-21). The amount and type of work was assigned to Technicians based on their skill and the amount of Comcast sales. (*Id*.). Technicians that completed work early could be assigned additional work or had the opportunity to assist other Technicians running behind to receive additional pay. (*Id*.).
>
> **Plaintiffs' Response to Defendants' Additional L.R. 56.1, ¶ 31**
>
> Denied. The technicians all stated that they were paid on a piecerate basis. They were never permitted to "upsell" products or services; all orders had to come from Comcast directly. They were also directed to perform work for Comcast customers for free, for which the technicians were not paid. CM/ECF #107-32 (Campos

6

> Affidavit) at ¶¶5, 20-23; CM/ECF #107-33 (Dyal Affidavit) at ¶¶5, 18-21; CM/ECF #107-34 (Panico Affidavit) at ¶¶5, 18-21; CM/ECF #107-35 (Popp Affidavit) at ¶¶5, 15-16, 20-23); CM/ECT #107-36 (Weber Affidavit) at ¶¶5, 15, 19-20; CM/ECF #107-37 (Weichmann Affidavit) at ¶¶5, 15-16, 20-23); CM/ECF #107-38 (Zervas Affidavit) at ¶¶5, 18-21).

(R. 128, at ¶31).

Plaintiffs failed to provide any record support to deny paragraph 31 of Defendants' statement of additional facts. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922-23 (7th Cir. 1994) (denials must be supported by record evidence); *Robledo v. City of Chicago*, 778 F.Supp.2d 887, 899 (N.D. Ill. 2011) (naked denials are insufficient to dispute a statement of fact). In response to paragraph 31, Plaintiffs only offered evidence through Plaintiffs' affidavits to assert that they could not "upsell" products or services. A plain reading of Plaintiffs' response to paragraph 31 is unmistakable that Plaintiffs do not refute Defendants' evidence that the compensation structure provided an incentive for employees to work efficiently and productively to complete more work during the day to earn more money. Plaintiffs also do not dispute that the amount and type of work assigned to Technicians was based on the Technicians' skill. Simply, a Technician with the ability to quickly complete assignments would be assigned more jobs (and earn more money) compared to Technicians that worked less efficiently. Lastly, Plaintiffs do not dispute that "Technicians that completed work early ***could be assigned additional work*** or had the opportunity to assist other Technicians running behind to receive additional pay."

Plaintiffs relied on testimony through affidavits to respond to paragraph 31 of Defendants' statement of additional facts. It is telling that Plaintiffs' affidavits do not even attempt to dispute that Defendants' compensation system allowed them to earn more money by working efficiently. If Plaintiffs' could have provided sworn testimony to dispute the statements

7

in paragraph 31 of Defendants' additional statements of material fact, there can be no doubt it would have been included in the affidavits. No matter the reason, Plaintiffs' failure to respond to Defendants' statements of material fact means the statements are admitted as a matter of law. N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party **will be** deemed to be admitted unless controverted by the statement of the opposing party.") (emphasis added); *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."); *Howard-Ahmad v. Chicago School Reform Bd. of Trustees*, 161 F.Supp.2d 857, 862-63 (N.D. Ill. 2001) (undisputed statements within the statement of fact paragraph deemed admitted). As a result, there is no dispute of material fact as to whether Defendants' compensation system created an incentive for Plaintiffs to work more efficiently. Defendants' Motion for Reconsideration should be granted and summary judgment issued in favor of Defendants.

## II.  PLAINTIFF WEICHMANN'S TESTIMONY, ALONE, PROVES THE COMPENSATION SYSTEM CREATED AN INCENTIVE TO WORK EFFICIENTLY.

The Court did acknowledge Defendants' reliance on its statement of material facts, ¶ 22 and statement of additional material facts, ¶ 31 to establish the incentive-based compensation system; however, the Court misunderstood Defendants' arguments that Plaintiffs admitted facts dispositive to the incentive issue. (R. 146, at p. 24). Instead of applying Plaintiffs' responses to those statements of fact, it appears the Court searched testimony of Plaintiff Weichmann – not cited by Plaintiffs – to identify a possible dispute of fact. Specifically, the Court relied on testimony from Plaintiff Weichmann from page 78, lines 3-9 of his deposition to conclude that Plaintiffs disputed whether they could pick up additional work. (R. 146, at p. 24). It must be

stressed that Plaintiffs did not rely on this testimony to dispute Defendants' evidence. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. When the moving party has met the standard of Rule 56, summary judgment is mandatory.") (citations omitted). The evidence relied on by Plaintiffs should control. Obviously, Plaintiffs do not believe Plaintiff Weichmann's testimony at page 78, lines 3-9 disputed Defendants' evidence related to the incentive issue. Furthermore, once the excerpt cited by the Court is placed in context, it is clear Plaintiff Weichmann actually admits additional work was available during the day and efficient workers could earn more money.

The passage from Plaintiff Weichmann's testimony cited by the Court came from a follow up question related to an example previously testified to by Plaintiff Weichmann. The example was provided by Plaintiff Weichmann in response to a question about when he complained to a supervisor that he should get paid by the hour. The following excerpts from Plaintiff Weichmann's deposition transcript place the statement relied on by the Court in context and show the testimony actually supports Defendants' evidence that Plaintiffs could pick up additional work:

> **R. 107-14, Weichmann Dep. at 72:8-21**
>
> Q: So you are saying that you were not paid hourly, right?
> A: Correct.
> Q: You allege now you should have been paid hourly? Am I following?
> A: Yes.
> Q: Did you bring that to anybody's attention, that claim, that assertion, while you were employed?
> A: Many times.
> Q: And tell me about that.
> A: "If you don't like it, there is other places to work."

9

> Q: Let me back up.

**R. 107-14, Weichmann Dep. at 74:15-24 and 75:1-10**

> Q: Now I want to get into the conversation. What did you say to them?
> A: You just want me to pick an occasion and kind of use that one? I can't tell you what day it happened, or the time frame it happened, or which supervisor it might have been with, but it was along the lines of:
>> "Hey, I threw a 5:00 to 7:00 on your route, a 5:00 to 7:00 appointment time frame."
>> "Okay. Well it is 2 o'clock right now, and I have nothing to do."
>> "Well, sorry. I mean, we need this done. You are the only guy out there."
>> Then I would say something along the lines of:
>> "I'm not getting paid to sit here."
>> He is like:
>> "Dude, it is the nature of the beast."
>> You know, it was always the same thing:
>> "You are in the industry."

This testimony alone establishes that jobs became available during the day. Although Plaintiff Weichmann testified he didn't want the additional assignment, he does acknowledge and admit that jobs became available during the day (in this example, the job became available at 2:00 p.m.). As the Court noted in its Opinion, Plaintiff Weichmann testified that his grievance was that he got stuck with a late assignment because other Technicians were not available to take the assignment. (R. 146, at pp. 24-25). It is clear from Plaintiff Weichmann's testimony that if other Technicians finished early (or otherwise had down time) and wanted the additional assignment, Plaintiff Weichmann would have been happy to give the assignment to another Technician to let them complete more work and earn more money. The relevant point is that jobs were available to pick up.[5]

---

[5] The context of Plaintiff Weichmann's testimony shows he did not like the incentive-based compensation system and would have preferred to be paid by the hour allowing him to continue getting paid while sitting in his truck as opposed to being required to seek out other assignments to get paid.

When Plaintiff Weichmann later testified that he did not think he was going to be picking up other work (the excerpt cited by the Court), it was in reference to the example when a job was <u>already</u> added to his assignments. Plaintiff Weichmann did not testify that he ***could not*** obtain other assignments during the day. Indeed, in the example he was discussing, he had just received an additional assignment. Nowhere in the record evidence do Plaintiffs establish (or even indicate) that they ***could not*** pick up additional work. In fact, in other parts of Plaintiff Weichmann's testimony (and in Plaintiffs' Statement of Material Facts) there is a clear admission that efficient Technicians had the opportunity to earn more money. The record evidence is as follows:

> **R. 107-14, Weichmann Dep. at 76:18-24 and 77:1-19**
>
> Q: I want to go back. You gave that example about the 5:00 to 7:00. So if that 5:00 to 7:00 does not get added to your route, then you are finished after you complete the – what was the window again? I think 10:00 to 2:00?
> A: A 10:00 to 2:00, a 10:00 to 1:00. I just threw a time frame out there.
> No, it was rare that you would get to go home after your route if you got done before even 4:00 or 5:00. If there were other guys in the field, you would be asked to go help them out, and if you went and helped them out, then you would try to ask them: "Can you split this job with me?" That's where you see in here there will be two names sometimes, 50 percent and 50 percent, for a job because they would have to pay you, pretty much, half of their job for you to come help them or else you weren't getting paid for it.

Plaintiff Weichmann attempted to give the impression that getting half of the commission pay when helping another Technician might not always happen, but it is clear from record evidence, including Plaintiffs' Statement of Additional Material Facts, that when Technicians performed work at the same location they split the commission pay. (R. 132, Defendants' Response to Plaintiffs' Rule 56.1 Statement of Additional Facts, at ¶ 25) ("On jobs where the technician was requested or required to help another worker complete an assignment, they were

11

not paid the piece-rate for the work, but the employer split the piece-rate for the job between the two technicians work on the job."). So, setting aside that it should be deemed admitted, as a matter of law, that Defendants' compensation system provided an incentive to work efficiently, Plaintiff Weichmann's testimony clearly removes any dispute on the issue. At the very least, the Technicians who worked efficiently could pick up additional work helping the less efficient Technicians at the end of the day. The more efficient Technician would receive *additional* pay, while the less efficient Technician would have to give ½ of his or her pay on the last jobs to the more efficient Technician. This testimony, alone, removes any dispute of fact that Technicians had a monetary incentive to work efficiently.

As a final note regarding the error in taking an excerpt of Plaintiff Weichmann's testimony out of context, is that Plaintiff Weichmann gave prior testimony indicating he might pick up additional work during the down period. He testified that he would only be sitting during the down time created by the extra 5:00 – 7:00 job if "there was nothing going on" and if "nobody need[ed] help in [his] area." (R. 107-14, Weichmann Dep. at 77:16-19). While he later testified that he did not think he was going to be picking up additional work, this was not an absolute conclusion inasmuch as he just acknowledged it was possible he wouldn't be sitting during the down time created by having the 5:00 – 7:00 job added. This is further proof that the excerpt captured by the Court does not dispute the fact Plaintiffs' *could* pick up other jobs, nor does it otherwise dispute Defendants' evidence that the compensation structure created an incentive to work efficiently.

## CONCLUSION

In denying Defendant's Motion for Summary Judgment, the Court determined there was a question of fact for the jury to decide as to whether Defendants' compensation structure

provided incentives to Technicians to work more efficiently. Upon reconsideration of the record evidence, it is clear Plaintiffs made multiple admissions that Technicians had an incentive to work more efficiently and could earn more money by doing so.

Even if the Court does not deem those facts admitted as a matter of law, as a result for Plaintiffs' failure to dispute the evidence on multiple occasions, Plaintiff Weichmann's testimony cited and relied on by the Court – when read in full context – provides direct evidence that efficient Technicians could at least pick up additional work (and money) at the end of the day. Moreover, the inefficient Technicians that needed help completing jobs at the end of the day would "lose" half the pay on each job for which they received assistance. This provides undisputed evidence that Defendants' compensation structure provided an incentive to work efficiently. Accordingly, Defendants' Motion for Reconsideration should be granted and summary judgment issued in favor of Defendants.

Dated: July 13, 2018

                                                                   Respectfully submitted,

                                                                   By:   /s/ Jon D. Hoag
                                                                        One of Defendants' Attorneys

Jon D. Hoag, Esq.
SmithAmundsen LLC
3815 E. Main Street; Suite A-1
St. Charles, Illinois 60174
Telephone – (630) 587-7914
Facsimile – (630) 587-7443
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2018, I electronically filed the foregoing ***Defendants' Memorandum of Law in Support of Defendants' Motion for Reconsideration*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ellen K. Emery
Ancel Glink Diamond Bush DiCianni & Krafthefer
140 South Dearborn Street, Suite 600
Chicago, IL 60603
*Attorneys for Plaintiffs*

I hereby certify that I have mailed by United States Postal Service the document to any non CM/ECF participants.

By: /s/ Jon D. Hoag
One of Defendants' Attorneys

Jon D. Hoag, Esq.
SmithAmundsen LLC
3815 E. Main Street; Suite A-1
St. Charles, Illinois 60174
Telephone – (630) 587-7914
Facsimile – (630) 587-7443
**ATTORNEYS FOR DEFENDANTS**